IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | Case No. _____ |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | (**JURY TRIAL DEMANDED**) |
| THE OHIO STATE UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

## **COMPLAINT**

Now comes the Plaintiff, by and through his counsel, and states and avers as follows for his complaint against the above-named Defendant:

### **JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since the matter in controversy arises under the laws of the United States. Specifically, the claims are asserted under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

2. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred within this Court's district.

**PRELIMINARY STATEMENT**

3. This is a civil rights action that is brought by a former student of The Ohio State University who is among the estimated 1500 to 2500 male students that were sexually assaulted, abused, molested, and/or harassed by Richard Strauss, M.D.

4. At all times relevant herein, Dr. Strauss was employed by The Ohio State University (hereinafter also referred to as "OSU") as an Associate Director of The Ohio State University's Sports Medicine program and as an Assistant Professor in the College of Medicine.

5. Dr. Strauss was employed at The Ohio State University from approximately 1979 through 1998.

6. Throughout his employment at The Ohio State University, Dr. Strauss betrayed his position of trust and confidence as a University employed physician by sexually abusing male students and student-athletes.

7. Although Plaintiff consented to receiving medical treatment from Dr. Strauss while he was a student athlete at OSU, he did not consent to inappropriate touching, sexual assault, sexual abuse, and/or sexual harassment.  As set forth below, the examinations performed by Dr. Strauss did not conform to appropriate standards of medical care.

8. OSU conferred upon Dr. Strauss the position of team physician for many sports, including the position of Team Physician for men's varsity swimming.

9. Dr. Strauss's sexual abuse of OSU student-athletes included inappropriate touching of their genitals, putting his face in unacceptably close proximity to his patients' groin areas and genitals, and making inappropriate sexual comments about their bodies.  All such conduct was performed under the veil of providing medically necessary treatment.

10. Dr. Strauss's aberrant conduct, which occurred under the veil of medical treatment, was known to the Defendant, including its administrators, coaches, physicians, and other employees.

11. Defendant did not take action to stop the abuse.

12. Despite knowledge of Dr. Strauss's conduct, Defendant continued to require its student athletes to be seen and be treated by Dr. Strauss for routine physicals and other medical treatment, including treatment of conditions that developed during the course of the athletic season.

13. In addition to his appointment as a team physician, Defendant also entrusted Dr. Strauss to treat students at the Student Health Services facility located on OSU's main campus. Defendant, by and through its agents and employees, failed to intervene and terminate Dr. Strauss's conduct and enabled his abuse. For example, in response to a student complaint that described Dr. Strauss's inappropriate sexual touching and comments during an examination, the Director of Student Health Services informed the student that no one had complained about Dr. Strauss before and accepted Dr. Strauss's explanation that the examination was medically appropriate.

14. At all times relevant herein, OSU agents and/or employees who were in a position to prevent Dr. Strauss's abuse, failed to intervene and take corrective action and/or demonstrated a deliberate indifference towards the sexual abuse being committed by Dr. Strauss upon male student-athletes and students.

15. On or about April 5, 2018, The Ohio State University announced it was commencing an investigation into the conduct of Dr. Strauss. Thereafter and on or about April 27, 2018, the firm of Perkins Coie, LLP, in coordination with OSU's Office of Legal Affairs, was retained to conduct an investigation into allegations of sexual misconduct committed by Dr.

Strauss during his employment with the University from 1978 to 1998. The report of the Perkins Coie investigation was issued on or about May 15, 2019.

16. The report concluded that employees and agents of the university had knowledge of complaints and concerns about the conduct of Dr. Strauss as early as 1979 but failed to investigate or act meaningfully. The report indicates that around 1979, athletic trainers received complaints that Dr. Strauss was taking too long (10 minutes) to perform genital exams on male student-athletes and that Dr. Strauss refused to allow a trainer to be present during the genital exams. It was also known that Dr. Strauss showered with the student-athletes. The report also notes that in 1983 a male student-athlete complained that he was instructed by Dr. Strauss to "drop his pants" even though he was seeing Dr. Strauss for a foot injury. In 1984, the report notes an incident in which multiple students complained that "Strauss was watching them take showers."

17. The report corroborates episodes of inappropriate sexual behavior committed by Dr. Strauss that persisted over the 20-year period that was the subject of the investigation. For example, when teams reported for pre-season physicals, stations were set up for various components of the physical. Dr. Strauss routinely chose to man the "hernia check station." He took an extended amount of time with each athlete and examined them in a room with the door closed. His "hernia checks" frequently took several minutes. Some lasted as long as 10 or 15 minutes. A line would form outside of Strauss's exam room as the athletes completed the other stations for the physicals and waited at the "hernia station."

18. The prolonged genital exams were well known not only to the athletes, but also to the athletic department personnel and team coaches. At least one team head coach requested that someone other than Dr. Strauss conduct the hernia checks for team physicals because of complaints about the manner in which they were conducted.

19. The report further describes Dr. Strauss's aberrant practices during his examinations. Dr. Strauss frequently positioned himself so that his face was at the same height as crotches of the athletes he was examining. He placed his face so close to his athlete/patients that they could feel his breath on their genitals. On other occasions, he would instruct athletes to sit on a bench and spread their legs. He would then role across the floor on a wheeled stool and stick his face deep between their legs to perform his exam.

20. On other occasions, Dr. Strauss would wear a head lamp and turn off the room lights before putting his head inches away from his patients' genitals.

21. Two independent physicians were retained to opine on the medical necessity of Dr. Strauss's examination practices as part of the Perkins Coie investigation. Both expert physicians found that the reports made by survivors all describe medically inappropriate and unnecessary methods and that Dr. Strauss's conduct was for his own sexual gratification.

22. The report further noted that from his earliest involvement as a team physician at OSU, it was broadly known within the athletics department that Dr. Strauss showered alongside the male students in Larkins Hall, which was a practice unique to Dr. Strauss among the other team physicians, and a practice that the student-athletes repeatedly complained about to their coaches.

23. The report further concluded that despite the persistence, seriousness, and regularity of complaints involving Dr. Strauss, no meaningful action was taken by the University to investigate or address the concerns until January of 1996. At that time, the University only undertook a very limited investigation of the complaint history surrounding Dr. Strauss.[1] In the nearly 20-year period leading up to that point, Dr. Strauss was entrusted with the responsibility of

---

[1] Perkins Coie Report @ 1.

providing care to his student-athlete patients and from that position, Dr. Strauss was able to violate their bodily anatomy and dignity, in a variety of ways.

24. The pervasive, sexually inappropriate behavior of Dr. Strauss was broadly witnessed and discussed in the Athletics Department, including the fact that he habitually showered with the male student-athletes, and that he frequently performed lengthy or medically unnecessary genital exams on male student-athletes, regardless of what injury or illness was presented to him.[2] The report observed that "students openly discussed Strauss's examination methods and complained about his loitering presence in the shower and locker room, including in front of coaches and other Athletics Department staff." The behavior of Dr. Strauss became an "open secret." The pervasive nature of the conduct made it akin to being "hazed" or a "rite of passage."

25. OSU permitted Dr. Strauss to examine students and student-athletes at the OSU Student Health Center from approximately 1980 to 1991. Dr. Strauss committed more acts of sexual abuse at the Student Health Center including inappropriate touching and fondling of students' genitals, medically unnecessary genital and rectal exams and soliciting students to undergo unnecessary medical examinations. Dr. Strauss's aberrant behavior was an "open secret" and reported to be so consistent and overt that it was considered "normal" within the Athletics Department.[3]

26. In addition to the pervasive misconduct of Dr. Strauss, the Perkins Coie report described over 50 credible witness accounts of voyeurism and incidents involving public sex acts at Larkins Hall, the athletic facility on OSU's main campus. Among the witnesses to these events

---

[2] Perkins Coie Report @ 88.
[3] Perkins Coie Report @ 59.

6

were OSU's coaching, training, and athletic facility staff. These incidents of voyeurism and public sexual activity occurred from the early 1980s into the late 1990s.

27. Dr. Strauss's conduct was a significant part of the sexually hostile environment at Larkins Hall. Dr. Strauss took long showers with student-athletes and would voyeuristically stare at them. Dr. Strauss also regularly entered athletic team locker rooms, including the locker room for the men's swim team, where he would voyeuristically stare at the student-athletes. Dr. Strauss further engaged in sexual abuse, assault, and/or harassment during examinations of student-athletes at Larkins Hall as set forth herein.

## PARTIES

28. Plaintiff hereby incorporates each and every allegation set forth in paragraphs 1 through twenty-seven (27) as if fully rewritten herein.

29. Because this complaint involves incidents of the utmost intimacy, the name of the Plaintiff has been withheld from this complaint to protect his identity.

30. Plaintiff John Doe is an adult male and a resident of Franklin County, Ohio.

31. Plaintiff attended The Ohio State University from 1984 to 1988.

32. Plaintiff was a member of OSU's varsity men's swim team and participated in NCAA Division I intercollegiate athletics.

33. At all times relevant herein, Defendant The Ohio State University was a public university organized and existing under the laws of the State of Ohio.

34. At all times relevant herein, OSU received federal financial assistance and was therefore subject to the law as set forth in Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.*

**FACTS INVOLVING ABUSE DURING EXAMINATIONS**

35. Plaintiff hereby incorporates each and every allegation set forth in paragraphs 1 through thirty-four (34) as if fully rewritten herein.

36. Defendant designated Richard Strauss, M.D. as the Team Physician for men's varsity swimming for the years including 1984 to 1988.

37. Because OSU held out Dr. Strauss as the Team Physician for multiple university sports, including men's swimming, Dr. Strauss was in a position to manage the medical care of OSU student-athletes throughout the school year.

38. Throughout Plaintiff's enrollment at OSU and throughout his participation on the men's swim team, Plaintiff was required to undergo examinations by Dr. Strauss for medical care as well as routine physicals. Plaintiff was examined by Dr. Strauss on more than 40 occasions, all of which took place at Larkins Hall and many of the examinations were solicited by Dr. Strauss. As a varsity scholarship athlete, Plaintiff felt compelled to submit to examinations that were performed by OSU's designated Team Physician.

39. Dr. Strauss routinely requested that Plaintiff remove his clothing and routinely touched and fondled Plaintiff's genitals for extended periods of time. Dr. Strauss further placed his face in close proximity to Plaintiff's genitals.

40. The routine touching and fondling would occur irrespective of the condition or ailment for which Plaintiff was seen and/or examined by Dr. Strauss. For example, Dr. Strauss responded to requests for decongestant medication by requesting Plaintiff to remove his clothing and submit to an examination which included the touching and fondling of Plaintiff's genitals.

41. Plaintiff trusted and believed that The Ohio State University would not have made Dr. Strauss the athletic team doctor for swimming as well as other sports and would not have

8

allowed athletes to be examined by Dr. Strauss unless his examinations were appropriate and necessary.

42. It was only within the last two years and after The Ohio State University announced its investigation in April of 2018 that Plaintiff knew or had reason to know that the conduct of Dr. Strauss was medically unnecessary and constituted unlawful sexual abuse, assault and/or sexual harassment.

43. Further, it was only within the last two years and after The Ohio State University announced its investigation in April of 2018 that Plaintiff knew or had reason to know that OSU was aware of and had known about Dr. Strauss's pervasive sexual abuse and failed to take corrective action to prevent the abuse from occurring.

44. Plaintiff was not aware of any formal grievance procedure for asserting complaints about Dr. Strauss's behavior.

45. If OSU had taken meaningful corrective action to prevent Dr. Strauss's sexual abuse, Plaintiff would not have been sexually abused, assaulted, and/or harassed by Dr. Strauss.

## CLAIM FOR RELIEF
## COUNT I: VIOLATION OF TITLE IX
## 20 U.S.C. § 1681(a), *et seq.*
## **HEIGHTENED RISK CLAIM**

46. Plaintiff hereby incorporates each and every allegation set forth in paragraphs 1 through forty-five (45) as if fully rewritten herein.

47. Title IX of the Education Amendments of 1972, codified at 20 U.S.C. § 1681(a), provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

9

48. Title IX is implemented through the Code of Federal Regulations as set forth in 33 C.F. R. § 106.8(b), which provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

49. Under Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination that is prohibited by Title IX.

50. Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

51. Title IX covers all programs of a school that receive any federal financial assistance, and covers sexual harassment including sexual assault by school employees, students, and third parties.

52. Title IX required OSU to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

53. Richard Strauss, M.D. was an employee and tenured faculty professor whose actions described above were carried out as an Assistant Medical Professor, Athletic Team Doctor, and/or Physician at The Ohio State University.

54. Dr. Strauss's sexual assault, abuse, and/or harassment of Plaintiff, as set forth above, constituted sex discrimination under Title IX.

55. OSU had actual knowledge of Dr. Strauss's pervasive and inappropriate sexual conduct and permitted it to continue throughout Dr. Strauss's employment at OSU.

56. OSU knew about Dr. Strauss's practice of sexual assault, abuse, and harassment through OSU personnel with authority to take corrective action to address it. These personnel included but were not limited to athletic directors, administrators, coaches, trainers, and other team physicians.

57. Throughout the 20-year period that was the subject of the investigation described above, OSU students and student-athletes reported their complaints and concerns about Dr. Strauss's inappropriate sexual conduct to OSU administrators and employees.

58. In light of the pervasive conduct of Dr. Strauss that spanned over two decades, it would be implausible for OSU to claim that it did not know about the misconduct of Strauss.

59. OSU was required to promptly investigate and address the numerous reports and/or complaints of unwelcome harassment and inappropriate and abusive touching by Dr. Strauss, but it failed to do so.

60. OSU's failure to take corrective action and prevent Dr. Strauss's sexual abuse, assault, and/or harassment constitutes sex discrimination, in violation of Title IX.

61. OSU acted with deliberate indifference to the sexual abuse, assault, and/or harassment that Plaintiff and other male OSU students were subjected to. The manifestation of OSU's deliberate indifference includes, but is not limited to, the following:

    a. Failing to promptly investigate, respond to, and take corrective action with respect to complaints about Dr. Strauss's sexual misconduct;

    b. Allowing Dr. Strauss to examine OSU students and student-athletes, despite students' complaints about Dr. Strauss's inappropriate sexual conduct;

11

      c.      Requiring student athletes to be examined by Dr. Strauss for annual physicals and medical treatment in order to participate in university sports and maintain their athletic scholarships despite complaints to athletic directors, coaches, and trainers about the inappropriate touching and sexual practices engaged in by Dr. Strauss during his examinations;

      d.      Failing to have in place an effective sexual harassment policy or grievance procedure that allowed students to bring complaints without first having to attempt to resolve their complaints informally with the alleged abuser.

62.      OSU's creation of and deliberate indifference to the sexually hostile culture within its athletic and student health programs substantially increased the risk that Plaintiff and other OSU students and student-athletes would be sexually abused, assaulted, and/or harassed.

63.      The sexually hostile environment effectively denied Plaintiff access to educational opportunities and benefits at OSU, including appropriate medical care.

64.      As a direct and proximate result of OSU's violation of Plaintiff's rights under Title IX, Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, anxiety, humiliation, embarrassment, loss of trust in medical professionals, and loss of enjoyment of life.

### COUNT II: Violation of Title IX
### 20 U.S.C. § 1681(a), *et seq.*
### HOSTILE ENVIRONMENT CLAIM

65.      Plaintiff hereby incorporates each and every allegation set forth in paragraphs 1 through sixty-four (64) as if fully rewritten herein.

66. At all times relevant herein, the OSU swim team practiced, trained, and competed at Larkins Hall, which was an athletic facility on the OSU main campus. Plaintiff was entitled to use the athletic facilities at Larkins Hall free from sexual assault, abuse, and/or harassment.

67. OSU owed Plaintiff a duty to investigate, remedy, and take corrective action for the conditions that made the Larkins Hall athletic facility a sexually hostile and abusive environment.

68. OSU had actual knowledge of a hostile sexual environment at Larkins Hall. Its athletic directors, administrators, coaches, trainers, and/or agents or employees had actual knowledge of the hostile environment and these individuals had the authority to take corrective action.

69. OSU was deliberately indifferent to this hostile environment even though it exercised substantial control over the environment. This environment was so hostile, severe, pervasive, and objectively offensive that it deprived Plaintiff of access to the educational opportunities and/or benefits provided by OSU. These educational benefits and/or opportunities included, but were not limited to, full use and enjoyment of the swim practice facilities, shower room and locker room; and full use and enjoyment of his athletic scholarships and membership on the OSU men's swim team.

70. The sexually hostile environment inside Larkins Hall as set forth above constituted sex discrimination in violation of Title IX.

71. As a direct and proximate result of OSU's violation of Plaintiff's rights under Title IX, Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

**COUNT III: Violation Of Title IX**
**20 U.S.C. § 1681(a),** *et seq.*
<u>**DELIBERATE INDIFFERENCE TO PRIOR SEXUAL HARASSMENT**</u>

72. Plaintiff hereby incorporates each and every allegation set forth in paragraphs 1 through seventy-one (71) as if fully rewritten herein.

73. Prior to Dr. Strauss's sexual abuse, assault, and/or harassment of Plaintiff, OSU had actual knowledge of Dr. Strauss's prior sexual misconduct of male students at OSU.

74. Based on its knowledge of Dr. Strauss's prior conduct, OSU had actual knowledge of the substantial risk that Dr. Strauss would sexually harass other male students at OSU.

75. OSU officials, agents, and employees, had the authority to prevent the substantial risk of harm posed by Dr. Strauss, and had the authority to take corrective measures, including but not limited to, removing Dr. Strauss from a position of authority in which he was allowed to encounter and examine students and student-athletes unsupervised and/or removing him altogether from his employment.

76. OSU's failure to intervene and/or take corrective action to alleviate the substantial risk posed by Dr. Strauss constituted deliberate indifference to the substantial risk that he would sexually abuse, assault, and/or harass other male students at OSU.

77. As a result of OSU's deliberate indifference, Plaintiff was subjected to the egregious conduct and sexually inappropriate behavior of Dr. Strauss as set forth above.

78. The sexual abuse, assault, and/or harassment as suffered by Plaintiff was so severe, pervasive, and objectively offensive that Plaintiff was deprived of access to educational opportunities and benefits, including a safe educational environment and appropriate medical care.

79. As a direct and proximate result of OSU's deliberate indifference to Dr. Strauss's prior sexual harassment of male students and student-athletes at OSU, Plaintiff has suffered and

will continue to suffer emotional distress, mental anguish, anxiety, humiliation, embarrassment, loss of trust in medical professionals, and loss of enjoyment of life.

## **FRAUDULENT CONCEALMENT**

80. Plaintiff hereby incorporates each and every allegation set forth in paragraphs 1 through seventy-nine (79) as if fully rewritten herein.

81. By continuing to employ Dr. Strauss as a team physician and tenured professor, OSU held Dr. Strauss out to the Plaintiff, and the public-at-large, as being qualified to provide appropriate medical care and treatment.

82. By failing to intervene or take any corrective action to prevent Dr. Strauss's conduct, OSU represented to Plaintiff, and to the public-at-large, that Dr. Strauss's conduct was acceptable and not sexual abuse or harassment.

83. This material misrepresentation to Plaintiff was false in that OSU had actual knowledge of sexual abuse by Dr. Strauss from other students and student-athletes.

84. OSU made the material representations with the intent that they would be relied upon and Plaintiff was induced to believe that Dr. Strauss's conduct was appropriate medical treatment and that his conduct did not constitute sexual abuse, assault, and/or harassment.

85. Plaintiff acted in reliance upon the material misrepresentations in that Plaintiff reasonably believed that Dr. Strauss's conduct was acceptable medical treatment and that it was not sexual abuse, assault, and/or harassment.

86. OSU concealed the fraud by continuing to hold out Dr. Strauss as a credible physician who did not commit sexual assault and thereby represented that Dr. Strauss was not a sexual predator despite its actual and/or constructive knowledge that Dr. Strauss had a pervasive

15

history of sexual abuse, assault, and/or harassment at the OSU Larkins Hall facility and at the OSU Student Health Center.

87. Plaintiff did not know and could not reasonably have known of OSU's fraudulent concealment until within the last two years and after OSU announced its investigation in April of 2018.

88. At all times relevant herein, the actions of OSU's employees, including coaches, trainers, and physicians constituted fraudulent concealment and their fraudulent concealment is imputed to OSU.

89. The acts and/or omissions of OSU demonstrated a willful, wanton, reckless, malicious, and/or conscious disregard for the rights and safety of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Enter judgment in favor of Plaintiff on his claim for discrimination under Count I Title IX against Defendant The Ohio State University;

(b) Enter judgment in favor of Plaintiff on his claim for discrimination under Count II Title IX against Defendant The Ohio State University;

(c) Enter judgment in favor of Plaintiff on his claim for discrimination under Count III Title IX against Defendant The Ohio State University;

(d) Enter judgment in favor of Plaintiff on his claim for fraudulent concealment under Count IV against Defendant The Ohio State University;

(e) Declare Defendant The Ohio State University's conduct in violation of Title IX of the Education Amendments of 1972;

(f) Award Plaintiff compensatory damages in amounts to be established at trial for past, present, and future emotional pain and suffering, mental anguish, and loss of past, present, and future loss of enjoyment of life and for all other damages set forth above;

(g) Award Plaintiff pre-judgment and post-judgment interest;

(h) Award Plaintiff his court costs and expenses, including attorney's fees, pursuant to 41 U.S.C. §1988(b); and

(i) Grant such other relief as this Court deems just and proper.

Respectfully Submitted,

ABRAMSON & O'CONNELL, LLC


*/s/ Thomas J. O'Connell*
Thomas J. O'Connell  (0030483)
695 Bryden Road
Columbus, Ohio  43205
(614) 461-6066
(614) 461-4524 (facsimile)
tom@aolawfirm.com


*/s/ Lawrence D. Abramson*
Lawrence D. Abramson  (0013278)
695 Bryden Road
Columbus, Ohio  43205
(614) 461-6066
(614) 461-4524 (facsimile)
larry@aolawfirm.com

Attorneys for Plaintiff

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury with respect to all claims set forth in the Complaint.

                Respectfully Submitted,

                ABRAMSON & O'CONNELL, LLC


<u>*/s/ Thomas J. O'Connell*</u>
Thomas J. O'Connell (0030483)
695 Bryden Road
Columbus, Ohio 43205
(614) 461-6066
(614) 461-4524 (facsimile)
tom@aolawfirm.com


<u>*/s/ Lawrence D. Abramson*</u>
Lawrence D. Abramson (0013278)
695 Bryden Road
Columbus, Ohio 43205
(614) 461-6066
(614) 461-4524 (facsimile)
larry@aolawfirm.com

Attorneys for Plaintiff